# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRADLEY MOORE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-15-283-STE |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative proceedings.

## I. PROCEDURAL BACKGROUND

Plaintiff's application for supplemental security income was denied initially and on reconsideration. Following a hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 8-18). The Appeals Council denied Plaintiff's request for

review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner.

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 416.920. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 4, 2012, the application date. (TR. 10). At step two, the ALJ determined Mr. Moore had severe impairments of depressive disorder, NOS, and anxiety disorder, NOS. (TR. 10). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 11).

At step four, the ALJ found that Plaintiff could not perform any of his past relevant work. (TR. 16). The ALJ further found Plaintiff had the residual functional capacity (RFC) to:

> [P]erform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant can understand, remember, and carry out simple, routine, repetitive tasks. The claimant can respond appropriately to supervisors, coworkers, and usual work situations, but have no contact with the general public.

(TR. 12).

Based on the finding that Mr. Moore could not perform his past relevant work, the ALJ proceeded to step five. There, he presented the limitations from the RFC to a vocational expert (VE) to determine whether there were other jobs Plaintiff could perform. (TR. 45). Given the limitations, the VE identified three jobs from the Dictionary

of Occupational Titles. (TR. 45-46). The ALJ adopted the testimony of the VE and concluded that Mr. Moore was not disabled based on his ability to perform the identified jobs. (TR. 17-18).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges: (1) improper evaluation of an opinion from a licensed practical counselor, (2) a failure to develop the record concerning an eye impairment, (3) overall error in the evaluation of the mental RFC, including improper exemption of various mental work-related limitations in the RFC and hypothetical to the VE, and (4) error at step five in the reliance on specific jobs.

The Court reverses and remands based on the ALJ's improper evaluation of the opinion from Plaintiff's licensed practical counselor and erroneous development of the record. The Court declines to address the remaining allegations, as they will be affected on remand.

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court does not reweigh the

evidence or substitute its own judgment for that of the Commissioner. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (quotations and citations omitted).

## V. ERROR IN THE CONSIDERATION OF "OTHER SOURCE" EVIDENCE

Licensed practical counselor, Joe Shaleen, counseled Mr. Moore 1-2 times per week, for over 7 years. (TR. 239-242, 254-356). On February 6, 2013, Mr. Shaleen authored a four-page, single-spaced letter detailing the history of his relationship with Mr. Moore. (TR. 239-242). In the letter, Mr. Shaleen summarized Plaintiff's personal, work, and medical history, and provided diagnoses and specific functional limitations. (TR. 239-42). In the decision, the ALJ referred to the letter as a medical source statement, but rejected it completely. (TR. 15). Plaintiff contends that the ALJ improperly evaluated the opinion, and the ALJ's stated reasons for rejecting the opinion are invalid.[1] Mr. Moore is correct.

Tenth Circuit law and Social Security Ruling 06-3p state that the ALJ must consider evidence from "other sources," who do not qualify as "acceptable medical sources." *Blea v. Barnhart*, 466 F.3d 903, 914-15 (10th Cir. 2006); Titles II and XVI: Considering Opinions and Other Evidence from Sources Who are not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies, 2006 WL 2329939, Westlaw op. at 4, 6 (SSR 06-3p). Opinions from these "non-medical sources" who have seen the claimant in

---

[1] Mr. Shaleen also submitted a PRT form which the ALJ rejected, giving "no weight." (TR. 16). But Mr. Moore does not argue that the ALJ erred in his consideration of this opinion, which had been given separate consideration by the ALJ. *Compare* TR. 15 (ALJ's discussion of Mr. Shaleen's Feb. 6, 2013 letter) *to* TR. 16 (ALJ's discussion of Mr. Shaleen's Sept. 19, 2013 PRT form). As a result, the Court will limit its discussion to Plaintiff's express challenge regarding the ALJ's treatment of Mr. Shaleen's February 2013 opinion letter.

an official capacity should be evaluated using the following factors: (1) the length and frequency of the treatment, (2) consistency of the opinion with other evidence, (3) the degree to which the source presents relevant evidence in support, (4) how well the source explains the opinion, (5) the level of the source's expertise, and (6) any other relevant factors. SSR 06-3p, 2006 WL 2329939, Westlaw op. at 5. In evaluating "other source" evidence, the ALJ should explain the weight given to the "other source," or otherwise ensure that the decision allows a reviewing party to follow the adjudicator's reasoning. *Id.*

As alleged by Mr. Moore, the ALJ failed to evaluate Mr. Shaleen's opinion under the factors set forth in SSR 06-3p. First, the ALJ should have considered the length and frequency of treatment in evaluating Mr. Shaleen's opinion, as the evidence shows that he was Plaintiff's sole treating provider for his mental impairments, having counseled him 1-2 times per week for over 7 years. (TR. 239-242, 254-356). The decision does not indicate that the ALJ had considered this factor in his analysis.

Regarding "consistency of the opinion with other evidence," the only other opinions regarding Mr. Moore's mental impairment are reports from a one-time consultative examiner and non-examining agency psychologists. (TR. 216-218, 220-233, 237). These opinions indicate that Mr. Moore suffers from depression and anxiety, but that the impairments would not impact his ability to work. (TR. 216-218, 220-233, 237). But as noted by Mr. Shaleen, these reports would likely not represent an accurate assessment of Plaintiff's mental health. According to Mr. Shaleen, "While [Mr. Moore] presents as cooperative, articulate, funny, thoughtful, and his appearance is always

clean and neat; a brief, one-time structured interview with Brad would likely not sufficiently yield the most accurate or complete picture necessary to make an adequate determination about his overall mental health, social functioning, and emotional states." (TR. 239). Thus, the consistency, or inconsistency, of the evidence regarding Mr. Moore's mental health would not necessarily be decisive. Even so, the ALJ gave no indication that he considered this factor in his evaluation.

Regarding evidentiary support, level of expertise, and how well the source explained the opinion, the Court concludes that these factors weigh in favor of Mr. Moore. Mr. Shaleen is a licensed practical counselor, who gave a detailed analysis of Plaintiff's history, diagnosis, and prognosis for work, supported by treatment notes spanning nearly seven years. (TR. 277-354).

The record is silent on whether the ALJ ever considered any of the required factors in evaluating Mr. Shaleen's opinion. Instead, the ALJ rejected Mr. Shaleen's opinion letter for two reasons. (TR. 15). First, the ALJ stated that Mr. Shaleen was not considered an "acceptable medical source." (TR. 15). The ALJ was entitled to consider Mr. Shaleen's level of expertise in his analysis. Even so, that factor alone did not excuse the ALJ's duty to evaluate Mr. Shaleen's opinion. As explained by the Tenth Circuit Court of Appeals, opinions from individuals who are not "technically acceptable medical sources" "are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (internal citation omitted); *see* SSR-06-3p, 2006 WL 2329939, Westlaw op. at 2 (stating that information from other

sources "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function.").

Second, the ALJ stated that he rejected Mr. Shaleen's opinions because "no functional limitations are provided." (TR. 15). The ALJ's explanation is invalid, as Mr. Shaleen's opinion did include functional limitations.

In the letter, Mr. Shaleen stated that Mr. Moore suffered from depression, anxiety, panic attacks, social anxiety, paranoia, and chronic stress. (TR. 239). Mr. Shaleen then gave an example of Mr. Moore's work history which demonstrated the impact of his mental impairments in the workplace:

> In the Spring of 2002, through early Fall of 2003, Brad worked for a company called OESD, eventually gaining full-time, permanent status. After a few months, through a combination of circumstances involving his difficulty and discomfort with navigating the complex and ongoing interpersonal dynamics and pressures in the workplace, Brad became convinced that he was being criticized and laughed at in an ongoing way, by most everyone in the office. At the same time, he was tasked with job duties that he felt were outside his area of competence, and were questionable ethically. As his stress, frustration, anxiety and paranoia grew, and he attempted to address both situations without feeling he was being taken seriously, he became concerned about being blamed for something inappropriate, becoming so anxious and paranoid that he eventually quit.

(TR. 240-41).

Under the heading of "Functional Information," Mr. Shaleen stated:

> Brad is quite sensitive to stress, and in particular fears not being able to manage the demands of full-time employment, his last experience having severely damaged his already shaky confidence-particularly in his abilities to navigate the interpersonal aspects of work environments. He is socially isolated, at times venturing out to events with his former group of church friends, but inevitably leaving feeling unwanted, criticized, and misunderstood. He feels very self-conscious about what others think about the fact he doesn't work, usually believing they have a negative view of

him, or don't take the time or effort to understand what he has experienced. Brad attempts to maintain steady sleeping and eating patterns, though often has difficulty going to sleep until very late at night/early in the morning due to an inability to disengage his mind from various preoccupations, and so he usually struggles to get up before 11:00am or Noon. He additionally struggles with lack of motivation and lack of energy. Often he experiences significant anxiety/panic states in which he is fearful about dying, He rarely engages in pleasurable activities, and gains little satisfaction from how he spends his time.

(TR. 241).

In sum, Mr. Shaleen concluded:

I believe that in the past Brad has met the DSM-IV-TR criteria for 296.34 Major Depressive Disorder, Recurrent, Severe, with Mood-Incongruent Psychotic Features, and currently meets the DSM-IV-TR criteria for 296.33 Major Depressive Disorder, Recurrent, Severe Without Psychotic Features (Without only because the coding criteria do not allow for occasional paranoid and delusional processes and these are not a constant feature of his experience). Brad's symptoms and functional impairment are well in excess of those required to make the diagnosis, and interfere consistently with occupational functioning and usual social activities and relationships with others.

(TR. 242).

Contrary to the ALJ's statement otherwise, that Mr. Shaleen's opinion contained diagnoses and functional limitations which would impact Plaintiff's ability to work. Mr. Shaleen diagnosed Severe Recurrent Major Depressive Disorder, anxiety, panic attacks, paranoia, and chronic stress which would "interfere consistently with occupational functioning." (TR. 239-242). Mr. Shaleen's opinion clearly contradicts the RFC which provides that Plaintiff "can respond appropriately to supervisors, co-workers, and usual situations." (TR. 12). But the ALJ did not include Mr. Shaleen's opinions in the RFC or explain why he had failed to do so. The lack of explanation was erroneous. *See* SSR 06-3p, 2006 WL 2329939, at 5.

## VI. ERROR IN THE DUTY TO DEVELOP THE RECORD REGARDING THE EYE IMPAIRMENT

Mr. Moore alleges that the ALJ erred in his duty to develop the record regarding an eye impairment and that the ALJ should have ordered a consultative examination to assist in determining whether the impairment would impact his ability to work.

### A. The ALJ's Duty to Develop the Record

It is beyond dispute that the burden to prove disability in a social security case is on the claimant." *Hawkins v. Chater,* 113 F.3d 1162, 1164 (10th Cir. 1997); 20 C.F.R. § 404.1512(a) ("[Y]ou must bring to our attention everything that shows that you are … disabled."). Nevertheless, because a social security disability hearing is a nonadversarial proceeding, the ALJ is "responsible in every case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Hawkins,* 113 F.3d at 1164 (internal citation and quotation marks omitted). Generally, this means that the "ALJ has the duty to . . . obtain [ ] pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir. 1996).

The ALJ's duty to recontact medical sources is triggered when the ALJ determines that there is not enough evidence in the record to determine whether or not a claimant is disabled. *See Greer v. Astrue*, 2009 WL 799275, at 7 (W.D. Okla. Mar. 24, 2009) (unpublished op). If the ALJ does not find the evidence to be insufficient, then he is not required to recontact a medical source. *Id.* Additionally, the Tenth Circuit Court of Appeals has stated that the ALJ bears responsibility for ensuring that "an adequate record is developed during the disability hearing consistent with the issues raised."

*Henrie v. United States Dep't of Health & Human Servs.,* 13 F.3d 359, 360–61 (10th Cir. 1993). As a result, "[a]n ALJ has the duty to develop the record by obtaining pertinent, available medical records which come to his attention during the course of the hearing." *Carter v. Chater,* 73 F.3d 1019, 1022 (10th Cir. 1996).

### B. Evidence and Findings Relating to the Eye Impairment

At the hearing, Plaintiff testified that he suffers from Myokymia—an eye impairment which involves a nerve in his eye which "constantly keeps going," and causes his eye to water and twitch. (TR. 38). According to Mr. Moore, the condition can be stress induced or occur when he is looking at a computer or television for more than 30 minutes. (TR. 39-40). At the hearing, the ALJ acknowledged that the record contained evidence that Dr. Jay Johnston saw Plaintiff for this condition. (TR. 38). With respect to this evidence, the ALJ stated: "Well unfortunately, for Dr. Johnston's records, I could not read his handwriting very well. I could read his nurse's and I could read the work [sic] myoclonia [sic] left, but I don't know - - maybe redness. I don't know what else he wrote." (TR. 39).

### C. Error in Failing to Develop the Record Regarding the Myokymia

Mr. Moore alleges that the RFC should have accounted for the eye impairment and the ALJ erred in failing to develop the record in this regard. The Court agrees, as there was sufficient evidence in the record which would have triggered the ALJ's duty to do so.

As stated, at the hearing, Plaintiff testified that he had been diagnosed with Myokymia[2] which could be caused by stress or staring at the computer or television for over 30 minutes. (TR. 39-40). According to Mr. Moore, the condition can cause his eye to water and/or twitch. (TR. 38-39) The record contained evidence that Plaintiff had seen Dr. Johnston for the condition, but at the hearing, the ALJ stated that he could not read Dr. Johnston's records. (TR. 38-39).

In the decision, the ALJ acknowledged the eye impairment and that Plaintiff had seen Dr. Johnston for treatment. *See* TR. 14 (noting that Mr. Moore "saw an eye doctor for a nerve problem with his eye, which was stress induced." (TR. 14). However, the ALJ did not explain the impact of the impairment, only noting that Plaintiff "reported a vision disorder, but he has a valid driver's license and drives." (TR. 11). But Plaintiff testified that in addition to stress, the condition could arise while staring at a computer or television for over 30 minutes, which could impact his ability to perform certain types of work.

The presence of an impairment does not necessarily equate to corresponding limitations in the RFC. *Cavalier v. Colvin*, 2014 WL 7408430, at 2 (N.D. Okla. Dec. 30, 2014) (unpublished op.). However, the Court is unable to determine whether the RFC should have reflected the eye impairment in light of the fact that Dr. Johnston's records were inconclusive, according to the ALJ. *See* TR. 38-39 (ALJ's statement that he could not read Dr. Johnston's handwriting). Under these circumstances, the ALJ should have re-contacted Dr. Johnston for clarification of his opinion and whether the impairment

---

[2] The transcript of the hearing says "myoclonia," but in his brief, Mr. Moore clarifies that the condition is actually "Myokymia." (ECF No. 18:12).

11

had impacted Mr. Moore's ability to work. *See Madrid v. Barnhart*, 447 F.3d 788, 791 (10th Cir. 2009) (remanding for ALJ's failure to develop the record, with instructions to re-contact physician for test results in light of inconclusive record evidence regarding the same). If, on remand, Dr. Johnston's opinion is not dispositive in determining the impact of the impairment on Plaintiff's ability to work, the ALJ may need to order a consultative examination. *See Hawkins*, at 1166 ("[W]here the medical evidence in the record is inconclusive . . . a consultative examination is often required for proper resolution of a disability claim."). However, this decision will be left to the ALJ on remand. *See id.* ("[T]he Secretary has broad latitude in ordering consultative examinations.").

## VII.   PLAINTIFF'S REMAINING ALLEGATIONS

Plaintiff also alleges: (1) an overall error in the evaluation of the mental RFC, including improper exemption of various mental work-related limitations in both the RFC and the hypothetical to the VE, and (2) error at step five in the reliance on specific jobs. But the Court need not consider these allegations as the RFC and any findings at step five will likely be affected following the reconsideration of Mr. Shaleen's opinion and further development of the record. *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) ("We will not reach the remaining issues raised by claimant because they may be affected by the ALJ's resolution of this case on remand.").

## ORDER

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the

parties, the undersigned magistrate judge **REVERSES** the Commissioner's decision and **REMANDS** the matter for further administrative proceedings.

    **ENTERED** on May 26, 2016.

_/s/ Shon T. Erwin_
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE